[S. F. No. 11729. In Bank.—December 1, 1925.]

A. G. BAKKENSON, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[1] MUNICIPAL CORPORATIONS—MUNICIPAL COURTS—JURISDICTION—CONSTRUCTION OF SECTION 11, ARTICLE VI, OF THE CONSTITUTION.—By the municipal court amendment to section 11 of article VI of the state constitution it was intended that in townships situated in part in cities or in cities and counties in which a municipal court has been established, there shall be no other court inferior to the superior court.

[2] ID.—CONSTRUCTION OF CONSTITUTION.—In order to determine what the framers of the municipal court amendment to section 11 of article VI of the constitution intended, the entire scope and purpose of said amendment as expressed in the terms thereof when read as a whole must be looked to and given effect.

[3] ID. — JURISDICTION — TERRITORIAL LIMITS. — Reading the municipal court amendment to section 11 of article VI of the state constitution as a whole it is manifest that its purpose was to provide for the organization and functioning of so-called municipal courts within the territorial limits of such cities and cities and counties as possess the requisite population therefor and as should by the ways provided therein conclude to embrace its benefits, such municipal courts to be confined in some respects as to their jurisdictions and functions to the territorial limits of the municipalities.

[4] ID. — JURISDICTION OUTSIDE MUNICIPALITIES. — By the amendment to section 11 of article VI of the constitution it was not intended

---

1. See 7 Cal. Jur. 701.
2. See 5 Cal. Jur. 583; 6 R. C. L. 47.

to destroy the judicial organization in the territory of townships lying outside the limits of municipalities, nor to extend the jurisdiction of municipal courts in cities to the territory outside the cities, and the jurisdiction of the justices' courts of townships continues in such outside territory, under said constitutional amendment.

[5] STATUTORY CONSTRUCTION — CONSTITUTIONAL AMENDMENTS — AMBIGUITY. — It is a cardinal principle of construction, applicable to constitutional amendments, with reference to the interpretation of statutes, that where a statute is fairly susceptible to two constructions, one leading inevitably to mischief or absurdity and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted.

(1) 35 C. J., p. 456, n. 86 New.   (2) 12 C. J., p. 708, n. 38 New. (3) 15 C. J., p. 985, n. 41 New.   (4) 15 C. J., p. 985, n. 41 New; 35 C. J., p. 456, n. 86 New.   (5) 12 C. J., p. 702, n. 82; p. 703, n. 87, 94; p. 714, n. 80; 15 C. J., p. 985, n. 41 New, 42; 32 Cyc., p. 630, n. 3.

APPLICATION for a Writ of Prohibition to prevent the Superior Court from exercising jurisdiction on an appeal from the Justice's Court. Walter C. Guerin, Judge. Writ denied.

The facts are stated in the opinion of the court.

Ivan Kelso, John R. Berryman, Jr., and Louis C. Spiess, Jr., for Petitioner.

Edward T. Bishop, County Counsel, and Chas. E. R. Fulcher, Deputy County Counsel, for Respondents.

RICHARDS, J.—The petitioner herein applies for a writ of prohibition directed against the respondents, Superior Court in and for the County of Los Angeles and Walter C. Guerin, one of the Judges thereof, forbidding said respondents to take and exercise jurisdiction over a certain case entitled *People* v. *Bakkenson* on appeal from the justice's court of Los Angeles township, in which case the petitioner herein is charged with the commission of a misdemeanor alleged to have been committed on the twenty-eighth day of July, 1925, within the said township of Los Angeles County, but outside of the portion thereof which lies within the cor-

5.   See 23 Cal. Jur. 766; 25 R. C. L. 1019.

porate limits of the city of Los Angeles and also outside of the portion thereof which lies or at least formerly lay within the corporate limits of the city of Long Beach. The questions involved in this proceeding relate to the interpretation to be given to what is known as the municipal court amendment to section 11a of article VI of the state constitution and to the legislation adopted by the legislature of 1925 for the purpose of giving effect to said amendment to the constitution; and also as to the validity and application of certain amendments to the charter of the city of Long Beach and of certain ordinances of the board of supervisors of the county of Los Angeles with relation to township boundaries within said county. The particular facts upon which this proceeding is founded and which the parties hereto have stipulated to be true are these: The petitioner was on July 28, 1925, arrested upon the charge of driving an automobile on and along Whittier Boulevard near Belden Avenue in the township of Los Angeles and in that portion thereof which lay and yet lies outside of the corporate boundaries of either the city of Los Angeles or the city of Long Beach, and was and is unincorporated territory; and upon his said arrest was brought before the court which was then purporting to act as the justice's court of said Los Angeles township and before Robert Scott, who was then purporting to be and act as the justice of the peace thereof. The petitioner upon his arraignment demurred to the jurisdiction of said court and of the justice thereof to hear and determine his case and this demurrer being overruled, entered a plea of not guilty, but upon the cause being set for trial, appeared upon the date fixed therefor and withdrawing his plea of not guilty, entered a plea of guilty and moved an arrest of judgment upon the sole ground that the said justice's court and the said justice thereof were without jurisdiction to pass sentence or render judgment in his case. The justice granted said motion, whereupon an appeal was taken by the district attorney to the superior court, which appeal being perfected and being assigned to department 10 thereof, the petitioner herein moved said court and Honorable W. G. Guerin, the judge thereof, to dismiss said appeal upon the ground that the said superior court had no jurisdiction to entertain or to do other than to dismiss the same for the reason that the justice's court from which said appeal had been taken was not at the times mentioned a lawfully constituted court and

was not in fact in existence; and that said Robert Scott, claiming to be and acting as the justice of the peace of said justice's court, had been without jurisdiction to hear and determine said case. The superior court and the said judge thereof denied petitioner's said motion and proceeded to set said cause for trial and will, unless prohibited by this court, entertain, try, and determine said cause upon said appeal.

It is further stipulated by the parties that the city of Long Beach, county of Los Angeles, is governed under a charter framed and adopted under the authority of the constitution of the state of California, and that said city has attained a population of more than forty thousand inhabitants, as ascertained by the last census, taken under the authority of the Congress of the United States. That certain amendments to the charter of the said city of Long Beach were duly ratified by the electors of said city and said amendments were submitted to the legislature of the state of California, for approval or rejection without alteration or amendment, at the forty-sixth session thereof, and that the said session of said legislature, acting through the senate and assembly thereof by joint resolution, the majority of both houses voting therefor, did approve said amendments to said charter as a whole and without alteration or amendment. That amendment number 35 of said charter (Stats. 1925, p. 1349), adopted as aforesaid, provides that upon the taking effect of certain acts of said legislature in conformity to sections 1, 5, 11, 12, 14, 18, 23, and 24 of article VI of the constitution of the state of California, as amended in 1924, relative to the creation, regulation, government, and procedure of municipal courts and for the establishment thereof in cities governed under a charter framed and adopted under the authority of said constitution it should *ipso facto* become effective and there should thereby be established in the city of Long Beach, a municipal court as contemplated by said sections of the California constitution herein referred to.

It further appears from the stipulation of the parties hereto as to the facts that prior to July 23, 1925, Los Angeles township lay partly within and partly without the city of Long Beach; that on July 23, 1925, the board of supervisors of the county of Los Angeles by a four-fifths vote adopted an ordi-

nance purporting to redistrict the county of Los Angeles
into judicial townships by the terms of which ordinance
Los Angeles township was so described as to lie wholly with-
out of the limits of the city of Long Beach; that on July 24,
1925, the said board of supervisors again passed and adopted
this identical ordinance, each of which said ordinances is
appended to the return of the respondents herein as Exhibits
"A" and "B"; that immediately after the adoption of each
of said ordinances and on the dates respectively thereof the
said board of supervisors regularly adopted an order that
the justices of the peace who, under the terms of each of
said foregoing ordinances, would succeed themselves, were
thereby appointed justices of the peace of their respective
townships as redistricted under said ordinances respectively.

The basis of the petitioner's contention herein rests upon
the interpretation and effect which he insists shall be given
to the constitutional amendment, the statutory provisions,
the charter amendments and the ordinances to which refer-
ence has above been made. The particular passage in the
constitutional amendment relied upon in support of the peti-
tioner's position is the portion of section 11a of article VI
thereof, which reads as follows:

"In any city or in any city and county where such mu-
nicipal court has been established, and in townships situated
in whole or in part in such city or city and county, there
shall be no other court inferior to the superior court except
as herein provided; and pending actions, trials, and all pend-
ing business of inferior courts within such city or city and
county or township, upon the establishment of any such
municipal court, shall unless otherwise provided by law be
transferred to and become pending in such municipal court,
and all records of such inferior courts be transferred to and
thereafter be and become records of such municipal court.
Upon the establishment of any such municipal court, and
until the first election and the qualification of the judge or
judges thereof and the first appointment and the qualifica-
tion of the clerks and other attaches thereof, the judges or
justices and the clerks and other attaches of any existing
inferior courts in such city or city and county or township
shall become and act as the judges, clerks and attaches re-
spectively of such municipal court."

[1] The petitioner contends that by the phrase in the foregoing portion of said constitutional amendment reading: "In any city or in any city and county where such municipal court has been established, and *in townships situated in whole or in part in such city or city and county, there shall be no other court inferior to the superior court except as herein provided,*" justices' courts were abolished in all townships which lay partly within and partly without cities or cities and counties wherein a municipal court has been established; and that since a municipal court has been established in the city of Long Beach by amendment to its charter, the justice's court wherein his case arose had ceased to be and the justice thereof ceased to function as such at the time of his arrest and attempted trial therein. We cannot agree with the petitioner's contention as to the interpretation to be placed upon the foregoing language in the constitutional amendment under review. [2] In order to determine what the framers of said amendment intended by the language employed in the foregoing portion thereof, the entire scope and purpose of said amendment as expressed in the terms thereof when read as a whole must be looked to and given effect. [3] Reading said constitutional amendment as a whole it is manifest that its purpose was to provide for the organization and functioning of so-called municipal courts within the territorial limits of such cities and cities and counties as possessed the requisite population therefor and as should by the ways provided therein conclude to embrace its benefits, the municipal courts to be thus established to be confined in some respects as to their jurisdiction and functions to the territorial limits of the municipalities thus resolving to establish the same. It was a matter of public political record and history of which the framers of this amendment apparently took notice that in the course of establishing such municipal courts in such municipalities cases would arise where townships with their already established justices' courts would be found to lie partly within and partly without the prescribed limits of such municipalities, and which would as to that portion of the area of such townships as lay within the boundaries of such municipalities be affected by the action of the latter in resolving to bind themselves within the terms of said amendment and that as to such portions of such townships thus to be affected the pro-

visions of said amendment should be operative. [4] But it nowhere appears from said amendment when considered as a whole that it was the intent of those who framed it to disturb to the extent of destroying the judicial organization within those portions of such affected townships as lay outside of the limits of those municipalities which had decided to set up municipal courts within their said limits. To so interpret the particular language of the portion of said amendment upon which the petitioner relies and which is above excerpted, would be to give to the amendment as a whole the effect of either taking away from the inhabitants of the portion of such townships as lay without the bounds of such municipalities their already established justices' courts, leaving them without tribunals for the institution and trial of causes within the jurisdiction of such court, or of *extending the jurisdiction* of the municipal courts of contiguous cities over such outlying territory, neither of which results is thinkable as within the intent of the framers of this amendment to the constitution, since to give it such an interpretation would be to take away from the inhabitants of such outlying territory their already established system of justices' courts and township officers by the vote of the electorate of an incorporated municipality of which they form no part, and to substitute in place thereof a system of municipal courts in the establishment of which and in the selection of the judges and other officers of which they would have no vote or voice. [5] It is a cardinal principle of construction, applicable to constitutional amendments, as was well said by this court in the case of *San Joaquin etc. Canal & Irr. Co.* v. *Stevinson*, 164 Cal. 221–229 [128 Pac. 924, 927], with reference to the interpretation of statutes, that: "Where a statute is 'fairly susceptible of two constructions, one leading inevitably to mischief or absurdity, and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted.' (*In re Mitchell*, 120 Cal. 386 [52 Pac. 800].) 'A construction should not be given a statute, if it can be avoided, which will lead to absurd results, or to a conclusion plainly not contemplated by the legislature.' (*Merced Bank* v. *Casaccia*, 103 Cal. 645 [37 Pac. 649].)" In Black on Interpretation of Laws, second edition, section 8, page 20, the rule is thus stated: "It is a cardinal rule in the interpretation of constitutions that the instrument must be so

construed as to give effect to the intention of the people who adopted it. This intention is to be sought in the constitution itself, and the apparent meaning of the words employed is to be taken as expressed, except in cases where that assumption would lead to an absurdity, ambiguity, or contradiction." In the case of *Signal Hill* v. *County of Los Angeles*, 196 Cal. 161 [236 Pac. 304], this court quoted with approval the following language from 2 Lewis' Sutherland on Statutory Construction, sections 347–376, viz.: "It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject matter is once clearly ascertained and its general intent, a key is found to all its intricacies—general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention. . . . Words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. . . . The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they were found in the act. The sense in which they were intended to be used furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning is to be given according to the intention thus indicated." In the case of *In re Haines*, 195 Cal. 605 [234 Pac. 883], this court, again quoting from the author last above cited, said: " 'The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. "While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words." Words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. Where

general language construed in a broad sense would lead to absurdity it may be restrained. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act.' (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 376, p. 721.)''

Having in mind these principles and applying them to the amendment as a whole and to the particular language in the portion thereof above quoted and upon which the petitioner places his main reliance, we are of the opinion that the phrase therein reading, ''in townships situated in . . . part in said city or city and county, there shall be no other court, etc.,'' should be interpreted to mean that it was the intent of the framers of said amendment to provide that in such part of such townships as would be found to be situated within such city or cities establishing such municipal court there should be no other inferior courts than such municipal courts as were to be provided therefor under the terms of said amendment. Such an interpretation would leave said amendment entirely free from the absurdity and confusion which would result from placing the meaning upon said clause for which the petitioner contends.

The foregoing conclusion is further enforced by the provisions found in another portion of said amendment to the constitution, reading as follows: ''The legislature shall determine the number of each of the inferior courts in incorporated towns and in townships or counties or in incorporated cities or cities and counties, where there is no municipal court, . . . and until such inferior courts are otherwise so determined and provided for, such inferior courts now existing shall until otherwise provided by law, continue in all respects as established at the time of the adoption of this amendment. . . . '' The obvious purpose of the foregoing provision was to empower the legislature to adjust whatever disturbances should arise in cities or counties or townships outside of those in or over which or parts of which municipal courts had been set up and to provide that until such adjustments had been made by appropriate legislation the *status quo* as to existing inferior courts within the affected territory should continue. We are aided, though not controlled, in our interpretation of the constitutional amendment in question by the contemporaneous interpretation

placed thereon by the legislature. The amendment in terms provided that the legislature should enact such legislation as was required to carry the provisions of the amendment into effect with special references to "the powers, jurisdiction, duties and responsibilities" of inferior courts in townships where there is no municipal court. In obedience to this direction the legislature of 1925 enacted what is known as "The Municipal Court Law" (Stats. 1925, p. 648), and in so doing undertook to deal with townships which would be affected by the establishment of municipal courts within cities of which such townships territorially formed a part and in so doing, and in sections 4 and 5 of said act, provided as follows:

"Sec. 4. In each city or city and county, in which a municipal court is established as herein provided, there shall be no other court inferior to the superior court unless it be a court having jurisdiction in cases in which the claim or demand is fifty dollars or less. Upon the establishment of a municipal court as herein provided all existing inferior courts, except as above provided, in the city or city and county wherein such municipal court is established and in a township situated wholly within such city or city and county shall be superseded by the municipal court, and the judges, justices, clerks and other attaches of such inferior court or courts shall become and be the judges, clerks and other attaches of the municipal court, in the manner and until such time as their successors are elected or appointed as hereinafter provided. All actions pending and all records of every court inferior to the superior court, the jurisdiction of which lies wholly within a city or city and county within which a municipal court is to be established, shall upon the day fixed for the establishment of such municipal court become actions pending in and records of such municipal court. All actions pending in, and records of courts, the jurisdiction of which falls partly within and partly without a city or city and county in which a municipal court is to be established, shall after the establishment of such municipal court continue in such inferior court; *provided, however,* that thereafter any actions then pending, together with the records thereof which could or should have been brought in such municipal court, if such municipal court had been established at the time such action was brought, shall

197 Cal.—33

upon motion of any party thereto be transferred to and become a case pending in and records of such municipal court.

"Sec. 5. In the event that there is annexed to a city having a municipal court, territory comprising all of the jurisdiction of an inferior court, the records of and cases pending in such inferior court shall become the records of and cases pending in the municipal court.

"In the event that there is annexed to a city having a municipal court, territory comprising part of the jurisdiction of an inferior court, the part of the township or other judicial subdivision not annexed shall continue as a judicial subdivision, but that annexed to the city shall be within the jurisdiction of the municipal court."

It thus appears that the legislature by the foregoing provisions in said act has placed upon the constitutional amendment in question precisely the interpretation which in our opinion should be given to its terms. It would seem to follow from the foregoing considerations that within that portion of Los Angeles township lying outside of incorporated territory and wherein the original case against said petitioner arose, the justice's court of said township still continued to exist and function. It is true that it did so within restricted territory in view of the action of the city of Long Beach in electing to organize a system of municipal courts within its own territorial limits, but the original jurisdiction of said justice's court remained otherwise unimpaired. And, if this conclusion be correct, it would seem to further follow that the fact, if it be a fact, that the city of Long Beach had or had not succeeded by amendment of its charter in bringing itself within the terms of the constitutional amendment and in thus establishing a system of municipal courts within its territorial limits, would be immaterial to the determination of this cause, since the offense with which the petitioner stands charged was committed in a portion of Los Angeles township which was never within the territorial limits of said city of Long Beach.

In the answer and return made by the respondents to the alternative writ issued herein they have set forth the fact that on July 23, 1925, and again on July 24, 1925, the board of supervisors undertook to pass two certain identical ordinances purporting to redistrict the townships of the county

of Los Angeles and to give to each of said ordinances immediate effect. These two ordinances are appended to the respondents' said answer and return as exhibits, and it appears therefrom that said Los Angeles township was thereby so recognized as to its boundaries that no portion thereof was to longer lie within the limits of the city of Long Beach and that no portion thereof was to extend beyond the boundaries of the city of Los Angeles. The result of this readjustment of the territorial boundaries of Los Angeles township, if immediately effectual, would be to exclude that particular portion of the township of Los Angeles within which the offense of the petitioner was committed from the boundaries of Los Angeles township as of the time of the commission of his offense. This fact, however, would be of no particular avail to the petitioner herein, since the offense with which he stands charged was a misdemeanor within the class described in subdivision 3 of section 1425 of the Penal Code, and hence was within the jurisdiction of the justice's court of any of the townships within the county of Los Angeles. It thus becomes immaterial to a determination of this case whether the aforesaid ordinances of the board of supervisors were or were not to be immediately effectual or in fact were to be valid or effectual at all, since this petitioner's case could in nowise be affected thereby. The city of Los Angeles has not as yet put into effect any law or ordinance establishing the municipal courts within its boundaries and hence the justice of the peace of Los Angeles township continues to function within that portion of said township lying within said city; and hence, as we have seen, had and has jurisdiction over such offenses as that with which the petitioner stands charged. Having had such jurisdiction at the time of the commission of such offense and at the time of the petitioner's arrest and arraignment, the trial court erred in its refusal to exercise it. Whether its order made in so doing was an appealable order is not discussed by the parties hereto and the motion to dismiss said appeal not being based upon that ground, we shall assume for the purposes of this decision that the petitioner's case was the proper subject of an appeal by the people to the superior court; and such appeal having been regularly taken and perfected, it follows that the said superior court had and has jurisdiction over said case upon

appeal and may properly proceed with the consideration of the same. It follows that the petitioner's application for a writ of prohibition must be and the same is hereby denied.

Myers, C. J., Lawlor, J., Shenk, J., Seawell, J., Waste, J., and Lennon, J., concurred.